SELESTINO RODRIGUEZ v. THE STATE.

No. 14938. Delivered February 17, 1932.
Rehearing Denied April 6, 1932.

The opinion states the case.

*Howell Johnson* and *W. C. Jackson,* both of Ft. Stockton, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

HAWKINS, JUDGE.—Conviction is for theft of cattle, punishment being two years in the penitentiary.

No bills of exception are brought forward complaining of any procedure during the trial, neither is there any complaint of the instructions given the jury.

The appeal is predicated on two propositions, one that there was a variance between the allegation and the proof as to ownership, the other that the evidence failed to show that appellant took the animal while it was alive.

The indictment alleged ownership in Henry Moore. He testified that he and one Lloyd were joint owners of the calf claimed to have been stolen by appellant; that Lloyd lived in Williamson county, some six hundred miles from the scene of the theft; that he (Moore) had the care, management and control of the calf. The witness further testified that he had leased the Develin pasture and that the calf and its mother with other cattle were running in said pasture. Appellant predicates his contention that the evidence shows a variance between ownership as alleged and proven on Moore's testimony as follows: "That pasture where these cattle were running belongs to Charley Develin. I had it leased—the Develin pasture. I don't know how much there is in it or how many sections there is of it; I was in charge of that place; I had a Mexican out there, but I was really in charge of it; this Mexican's name was Boselea Marukle. He had been gone two or three days, but he stayed there all of the time when I didn't have him away. He rode the fence and kept it up and looked after the cattle and had charge of everything when I wasn't there, that is, looking after the fence and keeping them out of the ditches."

We are not impressed that the evidence quoted seriously raises any issue that Marukle was the special owner of the stolen animal. His duty seems to have been to look after the fence, and to keep the cattle out of the ditches. He was not on the premises when the calf was stolen, but had been gone two or three days. However, if he had been there his relation to the animal does not seem to have been such as would require ownership to be alleged in him, rather than in one of the joint real owners.

The other point made by appellant that the evidence does not show that appellant took the animal while it was alive seems equally untenable as the one heretofore discussed. The witness Neavill testified that he came up on appellant while he was engaged in skinning the calf, and that appellant said "he had killed a beef." Neavill had known appellant four years and positively identified him as the man who was skinning the animal. Witness reported the matter. When parties went to where Neavill had seen appellant skinning the calf they found the head, hide

and carcass of the calf with the exception of one hind-quarter and one four-quarter, which was missing. It was not strange that this meat was not found at appellant's house after he had been discovered by Neavill in the act of skinning the animal. When appellant was arrested a knife with blood on it, and also hair corresponding with that of the calf was found in his pocket. His trousers were also bloody. His explanation of how the blood came to be on his knife and trousers was evidently not satisfactory to the jury. There was some issue made as to appelant's claimed alibi. The jury has decided that against him.

We discover nothing which would justify this court in disturbing the verdict.

The judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Two points are raised in appellant's motion, viz: That a variance is shown between the ownership alleged in the indictment and that appearing in the testimony; also that we erred in holding the evidence sufficient to sustain our conclusion that the alleged stolen animal was alive when taken.

Re-examination of the record confirms us in our belief that the ownership of the calf in question was properly alleged, and sustained. Nothing in the testimony supports the conclusion that the Mexican Marukle had the care, control and management of the cattle in the pasture leased by Moore, and,—according to his testimony,—in his care control and management. Hartman v. State, 85 Texas Crim. Rep., 582, 213 S. W., 936.

Mr. Moore said he took the calf in question with its mother to the pasture some twenty days before appellant was discovered in the pasture in the act of skinning said calf, which gave every evidence of having been recently killed. Appellant was discovered in the act, and when asked what he was doing said he was killing a beef, as stated in our original opinion. The cow, the mother of the calf, was later observed near by. Witnesses who went to the place said they found where a calf had been killed. They spoke of its entrails, and said they found under its entrails a cartridge shell. Blood was on the clothing of appellant in a number of places. His knife had on it, blood and hair which corresponded with that of the calf. These matters are set out in our original opinion. It would be so altogether improbable that appellant would skin a calf which he found dead and appropriate a hind and front quarter of the meat, and that it could not have been long dead if his act of skinning it blooded his knife and his clothes.

We are constrained to overrule the motion for rehearing.

*Overruled.*